## SISK et al. v. RANDON et al.

No. 9433.

Court of Civil Appeals of Texas. Galveston.
Nov. 18, 1930.

Rehearing Denied Nov. 26, 1930.

Styles & Erickson, of Bay City, A. E. & C. B. Masterson, of Angleton, and Oliver J. Todd, of Beaumont, for appellants.

Follett, Evans & Hill and Rucks & Enlow, all of Angleton, and Harry Holmes, Andrews, Streetman, Logue & Mobley, and Palmer Bradley, all of Houston, for appellees.

GRAVES, J,

Appellants assail an adverse judgment whereby—pursuant to the return of an instructed verdict to that effect, notwithstanding their own claims of ownership thereof both as heirs of William and Millie Alston and under the three, five, and ten-year statutes of limitation—the learned trial court vested in the appellees the title to the easterly 50 acres, or river end, of the William and Millie Alston 100-acre homestead tract in the Alsbury league on the Bernard river in Brazoria county.

In the state of the record on appeal the controlling question presented here is whether or not the appended instrument the appellees held under should be construed as being such a conveyance on its face as passed the title to the 50 acres involved to its grantees immediately upon delivery to them, or whether, as appellants contend, it should be regarded as at most only such an executory undertaking as rendered parol testimony tending to show that it was intended as a mortgage or deed of trust admissible, to wit:

"The State of Texas, County of Brazoria.

"Know all Men By These Presents: That we, William Alston and Millie Alston, his wife, of the County of Brazoria, State of Texas, for and in consideration of the sum of ten ($10.00) dollars to us in hand paid by our daughter, Adranna Randon, and her husband, Emanuel Randon; the receipt of which is hereby acknowledged, and further consideration of the care and attention and services rendered us in our old age by said Adranna and Emanuel Randon, and the further considerations of the undertaking and obligations on the part of said Adranna and Emanuel Randon, to take care of and provide for us during our natural lives, and the love and affection which we have for our said Daughter Adranna Randon and our Son-in-law Emanuel Randon, have Granted, Sold, and Conveyed, and do by these presents, Grant, Sell, and Convey unto Adranna Randon and Emanuel Randon of the County of Brazoria, State of Texas;

"1st. All that certain tract or parcel of land lying and being situated in Brazoria County, Texas, and being one hundred (100) acres of land out of the C. G., H. A. and H. O. Alsbury one and one-half league Grant, Abstract No. 4, situated on the West bank of the San Bernard River, and being out of the upper portion of the said grant, (description) * * * The tract herein conveyed being the upper half of the two hundred acre Homestead tract of the grantors, (description) * * * the tract herein conveyed being the tract on which grantors now reside.

"2nd. All the Live Stock which Grantors now own, etc. * * *

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Adranna Randon and Emanuel Randon, their heirs and assigns forever, subject to the terms and conditions hereinafter provided, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Adranna Randon and Emanuel Randon, their heirs and assigns forever against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

"The terms and conditions of this conveyance being that the said Emanuel Randon and Adranna Randon shall immediately take charge of all the property herein conveyed and shall hold, cultivate, or rent, manage and control same during our natural lives giving and granting to the said Emanuel and Adranna, full power to at any time mortgage or sell and convey, for such prices as they deem best, any part or all of the personal property herein conveyed and its increase and all crops raised on said land, the proceeds derived therefrom to be retained by said Adranna and Emanuel Randon, without any accounting therefor, to assist them in carrying their obligation to support the grantors herein.

"The said Adranna and Emanuel Randon shall take and it is the intention of the Grantors to convey to them by this instrument, the fee simple title to one-half of said tract herein conveyed, to be taken off of the River end of the said tract, including all of the river front and extending far enough back from the river to include one-half of said tract, with the improvements thereon situated, subject to the right of the grantors, if they should desire, which right is here reserved, to occupy the house in which they now live, during the life of either of them.

"The title to the western half of said tract of land shall be held in trust by the grantees herein in the proportion herein indicated, for Milli McKinney, of Galveston County, Texas, daughter of the grantors, one-fourth; William Alston, Jr., of Brazoria County, Texas, son of the grantors, one-fourth; Louise Alston and Thomas Hendrick, children of Louisa Alston, deceased, and grandchildren of Grantors, one-eighth each; and Georgie Boon, daughter of Mary Boon, deceased, and Granddaughter of Grantors, one-fourth. The above named as cestui que trust under this deed are to have no control or rights under this deed until after the death of the last survivor of the grantors herein, and no interest in the revenues derived from said property, or proceeds of any sales made during the life of the grantors. After the death of the last survivor of these grantors, then the said Adranna Randon and Emanuel Randon or the survivors, if either should die, shall convey to the above named cestui que trust their interest in the land as above designated, without accounting to either of them for the revenues of same up to the death of the last surviving grantor.

"If, at the death of the last surviving grantor herein, there should remain any of the personal property herein conveyed, the said Adranna Randon and Emanuel Randon, or the survivor of either shall take in fee simple one-half of said personal property, and the other half thereof shall be divided between the cestui que trust named herein in the same proportions as is above provided for the land.

"Witness our hands this 9th day of September, A. D. 1916.

"Millie X Alston     William X Alston
her     his
mark     mark
"Witness:
"J. J. Ducroz.
"C. C. Hampil."

While appellants formally sued for the entire 100 acres the quoted instrument thus described, only the title to the easterly or river-end half of it was actually at issue, as they admittedly owned the other one-half; the trial court held the legal effect of the instrument to have been an absolute conveyance at that time of the easterly 50 acres to the grantees to whom it was therein apportioned, and in consonance—in directing the verdict—ordered the finding to be in favor of the appellees as to that, and in favor of the appellants as to the remainder; we approve that determination and affirm the judgment.

It is felt that no better epitome of the considerations and supporting authorities, upon which this construction is rested, may be made than is thus done in the able brief for the appellees:

"Second Counter-Proposition.

"The deed from William Alston and wife, Millie Alston, to Adranna Randon and husband, Emanuel Randon, passed title to the fifty-acre tract involved herein immediately upon delivery; such deed was executory only in the sense that all the consideration was not fully performed, and this fact did not affect its validity as an executed conveyance of the homestead interest of Millie Alston.

"Third Counter-Proposition.

"The agreement on the part of Adranna Randon and husband, Emanuel Randon, 'to take care of and provide for' William Alston and wife, Millie Alston, during their natural lives, was a covenant and not a condition, and in the event of a breach thereof, grantors would have been entitled to sue for damages rather than for a forfeiture or cancellation of such deed.

"Fourth Counter-Proposition.

"The reservation by William Alston and wife, Millie Alston, of the right 'to occupy the house in which they now live during the life of either of them' was not a reservation of an estate in the 50-acre tract, but merely the reservation of a right to use the house as a home, which right was consistent with the vesting of a fee title in Adranna Randon and husband, Emanuel Randon, upon delivery of the deed.

### Authorities.

Carey v. Starr, 93 Tex. 508, 56 S. W. 324; Cox v. Combs, 51 Tex. Civ. App. 346, 111 S. W. 1069; Emerson v. Pate (Tex. Civ. App.) 165 S. W. 469; Rosek v. Kotzur (Tex. Civ. App.)

267 S. W. 759; Stitzle v. Evans, 74 Tex. 596, 12 S. W. 326."

■ Appellants' contentions to the contrary are based upon the view that the document involved amounted .to no more than an executory contract to convey the homestead of Millie Alston, and was ineffective for the reason that she, being then a married woman, had no authority to execute a contract to convey either her homestead or separate property that could have been legally valid for the purpose; .the authorities they cite as being in support undoubtedly uphold the principle of law appealed to, but they have in our opinion no application to the case at bar, because this instrument is not such a contract; on the contrary, the grantors therein, in reciting that they had "granted, sold and conveyed, and do by these presents grant, sell, and convey unto Adranna Randon and Emanuel Randon," and that "the said Adranna and Emanuel Randon shall take and it is the intention of the- grantors to convey to them by this instrument the fee simple title to one-half of said land herein conveyed," plainly expressed their intention to convey the fee-simple title to the 50 acres in question, the words they thus chose being so apt for that purpose as to have become imbedded in the jurisprudence of all English-speaking peoples as the accepted medium for an actual conveyance of that character. Not only so, but to make assurance doubly sure that no mistake would be made as to which particular 50 acres of the whole they intended to so convey, they further as specifically declared that it should "be taken off of the river end of said tract including all of the river-front and extending far enough back from the river to include one-half of said tract."

The obligation "to take care of and provide for grantors during their natural lives" was not the whole expressed consideration for the execution of the conveyance, but was merely stated to be the part of it yet to be performed, in addition to the acknowledged care, attention, and services that had then already been rendered the aged people; in other words, nothing whatever remained so far as may be discerned from the fully stated terms and conditions of the grant for these grantees under this instrument to do, except to likewise render the balance of the service thus provided for—that is, pay the deferred part of the agreed consideration—when their title would become absolute; until that had been done their grantors might be said to have held in abeyance an interest in the land of the nature of a lien or security for its performance, automatically determinable when compliance occurred, but, under the cited holdings of our Supreme Court, that neither prevented the title from otherwise passing to them on its execution, nor metamorphosed the

plainly characterized deed given to them into a mere executory undertaking.

■ As indicated supra, we also agree with appellees that this obligation to be performed by the grantees in future only at most gave rise to a covenant, for the breach of which the grantors would not have been entitled to a forfeiture of the title they had conveyed; nowhere in the deed itself are there any indicia whatever that this promise was intended to entail a destruction of the conveyance, if unfulfilled, and, in the absence of any such internal import, it will not be so construed. Rosek v. Kotzur, supra; Cox v. Combs, supra.

■ It is equally plain, we think, that the reservation in this instance of the right "to occupy the house" on the premises did not prevent the title in fee from vesting in the grantees on delivery of the deed, because the retained privilege is explicitly limited to the house, none at all being reserved in the land itself; not only so, but the whole context of the instrument plainly seems to import the purpose and objective on the grantors' part of then turning over the possession and beneficial use of the land thereby conveyed to the grantees to enable them the better to carry out their yet unperformed portion of the quid pro quo—"to take care of and provide for grantors' during their natural lives." Emerson v. Pate, supra.

■ By further assignments, appellants in their able brief complain of the rejection by the trial court of certain proffered testimony —reflected in six purported bills of exception —tending toward the contradiction of the express terms of the deed involved, but, as we understand the procedure, these presentments cannot be considered here, because the relied upon papers do not constitute bills of exception within the meaning of R. S. article 2237, hence are no part of the record on this appeal; all six of them are alike, in that they were not approved by opposing counsel, nor allowed nor ordered filed by the court, but were all refused with this written notation thereon by the presiding judge:

"The foregoing bill of exceptions presented to me on August 31, 1929, and rejected upon the grounds same is too general and not in proper form.

"W. S. Sproles,
"Special District Judge Presiding."

■ In these uncontroverted circumstances, appellants' proffered bills having been refused, we think it became their duty either to compel the trial judge by the writ of mandamus to file bills in conformity to the specifications in subdivisions 7 and 8 of this statute, or to themselves procure and file bystanders' bills, pursuant to subdivision 9 thereof; having done neither, they have pre-

sented nothing reviewable here. Alsup v. Hawkeye Securities Fire Ins. Co. (Tex. Civ. App.) 300 S. W. 223; article 2237, R. S. 1925; Fort Worth & Denver City Ry. Co. v. Harris (Tex. Civ. App.) 256 S. W. 699; Galveston, H. & S. A. Ry. Co. v. Collins, 31 Tex. Civ. App. 70, 71 S. W. 560; Garvin-Melton Co. v. E. W. Fowler Co. (Tex. Civ. App.) 292 S. W. 976; Gooch v. Sparkman (Tex. Civ. App.) 285 S. W. 897; Land v. Klein, 21 Tex. Civ. App. 3, 50 S. W. 638; Norton v. Lea (Tex. Civ. App.) 170 S. W. 267; Priddy v. O'Neal (Tex. Civ. App.) 142 S. W. 35; Texas Jurisprudence, Vol. 3, pages 651, 654, 660.

If the assignments should be considered, however, they could not in our opinion be sustained, for this reason: The oral testimony they present the exclusion of as error all tended either toward contradicting the express terms of the quoted deed as being a conveyance by parol statement that it was intended as a mortgage, or toward impeachment in like manner of the contractual portion of the recited consideration therein obligating grantees to take care of grantors in the future by proof that it had not been performed; appellants' suit was merely a formal one in trespass to try title, three, five, and ten-year pleas of limitation being added, but there was no attack upon the initial validity of the deed as such, nor any charge that there had been fraud, accident, or mistake in the execution thereof.

Since on its face it not only in clear terms imports an absolute conveyance of the title to the 50 acres to the appellees, but also as plainly exhibits the only unperformed part of the consideration to flow from them as amounting to a simple contract on their part to thenceforth take care of the grantors during the balance of their lives, parol testimony in the circumstances was not admissible for either purpose under these holdings of our Texas appellate courts. Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Mann v. Wright (Tex. Civ. App.) 269 S. W. 222; Pridgen v. Furnish (Tex. Civ. App.) 11 S.W.(2d) 844; East Line & R. R. R. Co. v. Garrett, 52 Tex. 133; Waybourn v. Spurlock (Tex. Civ. App.) 281 S. W. 587.

As against the appellees Follett, Thomas, Chapman, and the Southern Company, in no event could it have been properly shown that the deed had been intended as a mortgage or deed of trust, because it had been regularly acknowledged and filed for record in Brazoria county about the time of its execution, thereby exhibiting—as we hold—of record that the absolute title to the land had been conveyed to Adranna Randon and husband, and the undisputed proof further showed that these appellees had thereafter in the light of such record acquired their interests in the tract for valuable consideration down and under those two grantees, wherefore they were in the attitude of innocent purchasers for value without notice of any infirmity in the deed to their own grantors. Eylar v. Eylar, 60 Tex. 315; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Stephenson v. Mallett (Tex. Civ. App.) 240 S. W. 633.

After careful consideration of the statement of facts, we conclude the evidence failed to raise an issue of title by limitation in appellants' favor; aside from the mere muniments of title, all that was offered upon it was the testimony of the witnesses Adranna Randon and George Boone; the former's has no real bearing on that question, reflecting only who William and Millie Alston's heirs were, how they two came to sign the deed involved by their marks, that Millie did not live on the place continuously after William's death, and that she remembered "when Tommie Hendricks built his house on the land down there, but I don't remember the year he built it"; the latter's as an entirety is so vacillating, uncertain, and inconclusive as to any material incident of limitation, that we have been unable to see how it could raise an issue as to the existence of any fact necessary to support a title of that sort; he shows that he was not on the property either during the years 1916 to 1919, or 1922 to 1925, both inclusive, nor more than once or twice a year throughout the period during which the claimed limitation ran, and finally, that all he knew about the matter was what somebody else had told him.

There was no testimony that appellants had held peaceable and adverse possession of this 50 acres, or that they had cultivated, used, and enjoyed it under a claim of right in themselves for any one of the three limitation periods relied upon; the one fact that appears is that Tommie Hendricks built a house on the place, but neither the nature of his claim—whether in consonance with, or in derogation of, the claimed right of the appellees—nor how long or continuously he held under it, is in any wise shown; that alone therefore would be insufficient. Durham v. Houston Oil Co. (Tex. Com. App.) 222 S. W. 161; Howell v. Garlington (Tex. Civ. App.) 270 S. W. 269; Rev. St. 1925, arts. 5507, 5509–5511, and article 5519, as amended by Acts 1927, c. 250, § 1 (Vernon's Ann. Civ. St. art. 5519); Dunn v. Taylor, 102 Tex. 85, 113 S. W. 265.

It follows that the trial court's judgment should be affirmed; that order has entered.

Affirmed.